## Mullen v. Hibbert, Appellant.

Argued April 29, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*W. M. Ewing,* for appellant.

*William T. Hughes,* for appellee.

OPINION BY RENO, J., July 16, 1943:

Judgment in assumpsit was entered against appellant by a justice of the peace for $81.95. She appealed to the county court where the case was tried by a judge without a jury. He entered judgment against her for the same sum. She has appealed from the refusal of the court in banc to open the judgment and to enter judgment for her on the whole record.

A careful study of the testimony convinces us that the trial judge correctly found the facts. We adopt and paraphrase his statement of them as recorded in the opinion of the court in banc. Appellant visited the McKeesport store of the Equitable Sales Company (hereinafter called Equitable) and inquired for an electric refrigerator. A few days later, on Wednesday afternoon, September 3, 1941, appellee visited the appellant's home and said he was a salesman for Equitable. He informed appellant that Equitable could not supply the type of refrigerator which she desired, a Westinghouse No. 7, that such refrigerator could not be obtained anywhere in Pittsburgh, but that he could secure a Westinghouse No. 9 refrigerator for her if she wished to deal with him personally and directly. He telephoned from her home to a distributors' agency, and then informed appellant that he would have a Westinghouse No. 9 delivered if at all possible on the next day, Thursday, September 4. She gave her check for $100 payable to appellee. When the refrigerator did not arrive on Thursday afternoon or Friday morning, she called her bank, and ascertaining that the check had not been cashed, stopped payment thereon. Appellant called several dealers and located a Westinghouse No. 7 in the shop of a Clairton dealer, which she purchased from him and who delivered it to her on Friday, September 5. Appellee caused the refrigerator ordered by appellant to be delivered on Friday. By that time she had already obtained the refrigerator from the Clairton

dealer. She refused to accept the one delivered by appellee.

The false representation seems to consist in appellee's alleged statement that his principal, Equitable, could not supply a Westinghouse No. 7 refrigerator and his pretense that he was acting for Equitable. There is no evidence to support the contention. There is no evidence that Equitable had a supply of Westinghouse No. 7 and hence there was no fraudulent statement as to that. Equitable, according to the testimony of the manager, called as a witness by appellant, "had refrigerators on our [its] display floors. We could not, in many instances, give immediate delivery but we were taking orders for refrigerators." Possibly, Equitable could have performed the same service rendered by appellee; that is, it might have secured for her the desired refrigerator from some other dealer. However, she chose to deal with appellee personally. Laying aside appellee's questionable ethical conduct toward his employer, it is clear that appellant dealt with appellee on his own responsibility as an independent agent and, therefore, he was not representing himself to her as acting for Equitable. She made her check payable to him personally, and she knew that he was not acting for Equitable. She invited plaintiff into her home to use her telephone, which could have been only for the purpose of verifying to her satisfaction that appellee would secure a Westinghouse No. 9 refrigerator for appellant, and from a dealer other than Equitable. As to her willingness to take the Westinghouse No. 9 refrigerator, after stating that the space for the refrigerator had been measured and found large enough, she testified, "Well, I thought if I cannot get anything else I simply have to take the one he could get for me."

Appellant's second contention fails in view of the trial judge's finding that no definite time was agreed upon for delivery and that the only agreement was that all possible speed would be used to accomplish its

delivery. "Where by a contract to sell or a sale the seller is bound to send the goods to the buyer, but no time for sending them is fixed, the seller is bound to send them within a reasonable time": The Sales Act of May 19, 1915, P. L. 543, §43, 69 PS §253. Under the agreement of the parties and all the evidence in the case, the trial judge was warranted in finding that the delivery was made within a reasonable time.

Judgment affirmed.